**FILED**

**OCT 23 2006**

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DEDE ENGEL, | ) | CIV. 05-5055-RHB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| RAPID CITY SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

I.   BACKGROUND ................................................. 1
     A.   Facts ................................................. 1
     B.   Procedural History .................................... 9
II.  STANDARD OF REVIEW ........................................... 9
III. DISCUSSION .................................................. 10
     A.   Sexual Harassment: Counts I and II ................... 10
     B.   Constructive Discharge: Count III .................... 16
     C.   Retaliation .......................................... 19
     D.   State Claims of Negligent Hiring, Supervision, and Retention &
          Negligent or Intentional Infliction of Emotional Distress:
          Counts IV and V ...................................... 20
IV.  CONCLUSION .................................................. 20

Before the Court is defendant Rapid City School District's ("RCSD" or "district") motion for summary judgment. For the reasons set forth below, RCSD's motion for summary judgment is granted.

I. **BACKGROUND**

A. **Facts**

In 1997, plaintiff DeDe Engel began working for RCSD. (Pl.'s Statement of Disputed Material Facts ("PSDMF") at 1.) During her service with the district, she was employed at the

Agnes Parr Building as a Technology Secretary and later promoted to the position of Instructional and Network Technology Associate I, where she remained until her resignation in early 2004. (Id.) Plaintiff's duties included answering the technology support hotline to assist in troubleshooting problematic computers, compiling the financial budget reports, and communicating with computer technicians if she encountered a serious problem with a district computer. (Pl.'s Dep. at 7-9.) Other than her work experience, plaintiff did not possess a specialized degree. (Id. at 9.)

In early March 2003, plaintiff was approached by one of her supervisors, Christopher Konvalin, and asked about any ongoing sexual harassment occurring in the workplace. (Id. at 63.) Konvalin's inquiries were in response to a complaint submitted by plaintiff's female coworkers. (Id.) The complaint concerned the conduct of a male employee with RCSD, David Herrera, who worked in the same capacity and building as plaintiff. (PSDMF at 1.) Because of the allegations made against Herrera, plaintiff, too, was asked to provide a statement. (Pl.'s Dep. at 63-64.) Upon Konvalin's receipt of the employees' statements, an informal investigation of Herrera's workplace conduct ensued. (Id. at 64.)

Plaintiff stated that she had been subjected to Herrera's actions for approximately three or four years. (Id. at 73.) The nature of Herrera's conduct included the following: he would ask plaintiff, sometimes on a daily basis, what color thong underwear she would be wearing; he would inquire if plaintiff's bra matched her underwear; he would make a request for plaintiff to turn around so he could see her butt; he would comment to plaintiff that she had a nice butt; and, on one occasion, after stating to plaintiff that his penis was hard, he asked plaintiff to feel his penis. (Id. at 74.)

2

As a result of RCSD's interviews with the alleged victims, Herrera was suspended without pay on March 6, 2003, losing roughly $4,000 in wages, and a formal investigation commenced. (Lennie Symes's Dep. at 37-38; David Herrera's Dep. at 47.) Plaintiff's and Herrera's supervisors conducted the formal investigation. (Symes's Dep. at 37-38.) At that juncture, RCSD reviewed and verified the complaints against Herrera, concluding that the complaints were legitimate and that Herrera's explanation was incredible. (Lennie Symes's Dep. Ex. 24.) In addition to the harassing conduct, the district found that Herrera had been utilizing work computers for inappropriate materials. (Symes's Dep. Ex. 23.) However, after balancing all of the evidence considered throughout the investigation, Herrera was permitted to return to work on April 15, 2003. (Symes's Dep. at 43-44.) Upon his return, though, Herrera was subjected to numerous conditions and restrictions. (Id. at 43-44.)

As the first condition, Herrera was required to undergo counseling and establish his participation in a counseling program prior to returning to work. (Symes's Dep. Ex. 24.) Second, Herrera was not entitled to reinstatement of his lost pay for the period of his suspension. (Id.) As for RCSD's restrictive measures, Herrera was no longer permitted to hold a master key to the buildings, he was obligated to obtain his supervisor's advance approval for any travel outside of the Agnes Parr Building, he was mandated to travel with a partner, he was prohibited from being alone with any female employee, and all of his start, end, and lunch times were set by a supervisor. (Id.) Finally, Herrera was advised that any future allegations of harassment or instances of improper conduct would result in his immediate termination of employment. (Id.)

Despite the limitations placed on Herrera, plaintiff was unhappy and uncomfortable with Herrera's return to work. (Pl.'s Dep. at 39, 77.) Specifically, Herrera was allowed to resume his

3

duties in the same position as before and placed in close proximity to plaintiff and other female coworkers. (PSDMF at 3.) Because she felt RCSD's steps in suspending Herrera and allowing him to come back were insufficient, plaintiff contacted Konvalin, Lennie Symes, Director of Technology, and Steven R. Hengen, RCSD's Assistant Superintendent of Human Resources, detailing her concerns. (Steven R. Hengen's Dep. at 42.) In disclosing her worries, plaintiff stated that she was uneasy with sitting in the same room as Herrera, being left alone in the building with him, and losing job responsibilities because of the situation. (Pl.'s Dep. at 37-38; Hengen's Dep. at 67.)

On May 9, 2003, Symes authored a letter to plaintiff in an effort to address her concerns about the newly instituted workplace dynamics. (Symes's Dep. Ex. 18.) Symes's letter provides in pertinent part as follows:

> Upon determination of Dave [Herrera]'s unacceptable behavior, administrative action was taken with sanctions and strict guidelines placed on Dave. The actions were for the sole purpose of making the workplace safe for everyone and are not a reflection on you, your work, or our trust in you as an employee. Rather these actions are to help Dave prove he is capable of working in a professional and acceptable manner under close supervision. If Dave's behavior is consistent with our expectations, he will continue to work for the school district. If Dave's behavior is inconsistent with our guidelines, further administrative action will be taken. If Dave displays any further harassment behaviors, his working status with the district will be terminated. On the other hand, if Dave behaves in a professional and responsible manner over an extended period of time, some of the restrictions may gradually be lifted.
>
> You had made clear that you would like as little interaction with Dave as possible. For example, sometimes you have equipment to be repaired that needs to be moved to Dave's work area. Any equipment that needs to be moved from your work area to Dave's room can instead be brought to Chris's room. Chris and Kim will take reasonable measures to coordinate schedules of technicians, but there may be times most technicians will be out of the building responding to district technical needs. Clerical staff is always in the building, so it is highly unlikely there will be any time you and Dave are the only people in Agnes Parr. Dave has

4

> also been instructed to avoid situations of being in a room alone with you and to avoid corresponding with you. Dave's work hours have been restricted . . . .
>
> While we have made efforts to reduce interaction between you and Dave, incidental interaction is inevitable. It is important for all of us to create a professional working environment, including support for each other in the midst of uncomfortable situations. Because all tech staff is expected to attend department meetings, we all need to take reasonable efforts to make these situations as comfortable as possible.
>
> You had expressed concerns about Dave handling more account management responsibilities. This action is in no way a reflection on your work. . . .

(Id.)

After his return, Herrera and plaintiff did not communicate with each other. Instead, the two conveyed work related matters through Konvalin or one of the other technicians. (Pl.'s Dep. at 28-29.) Plaintiff and Herrera worked in different rooms and, most of the time, Herrera would stay in his workspace with his fellow technicians. (Id. at 30.) If a particular job required his attention in plaintiff's room, Herrera would enter plaintiff's room to work on the project. (Id.) Plaintiff was not left alone in a room with Herrera, except on one occasion when she was the only one with Herrera in the building after returning from lunch, which made her feel very uncomfortable. (Id. at 30-31.) In separate instances, plaintiff, Herrera, and other employees were required to attend meetings in the same room, but no interplay took place between plaintiff and Herrera at those times. (Id. at 30.)

With regard to individual interaction, though, Herrera attempted to initiate a conversation when he said "hi" to plaintiff in a hallway. (Id. at 31-32.) Plaintiff, however, ignored Herrera and kept walking past him. (Id. at 32.) At a different time, Herrera tried to speak with plaintiff over the building's intercom system. (Pl.'s Ex. K.) RCSD was subsequently informed of Herrera's indiscretions. (Hengen's Dep. at 52.)

5

Due to his failure to comply with RCSD's terms and conditions, Herrera was suspended again on August 5, 2003. (Pl.'s Ex. L.) In a letter from Hengen, Herrera was advised of the alleged infractions of violating the district's written restrictions by speaking to plaintiff and, for a reason unrelated to plaintiff, filing false mileage claims for trips bearing no relationship to work. (Id.) Similar to the first, Herrera's second suspension was without pay and RCSD commenced an investigation. (Id.)

As to his employment status with the district, Herrera was contacted again by Hengen on August 18, 2003. (Pl.'s Ex. K.) In Hengen's August 18 letter, Herrera was permitted to continue his work with RCSD but placed under the following terms and conditions:

1) No reinstatement of pay will be made for the period of your suspension.
2) You are not to discuss any personnel matters related to this case with employees of the Rapid City School District.
3) When in your control, you are not to be alone with any female employee.
4) Without prior approval, you are not to initiate discussions with, apologize to, or otherwise contact Dede Engel or Jamie Volk.
5) You will inform your immediate supervisor of all travel and its purpose prior to leaving Agnes Parr.
6) Any future complaints of conduct of harassment or violation of the aforementioned terms and conditions will result in additional administrative action, up to and including the termination of your employment.

(Id.)

RCSD's restrictive measures did not satisfy plaintiff, (pl.'s dep. at 32-34), even though RCSD received no further complaints regarding Herrera, (pl.'s dep. at 32-33, 43-44; Hengen's dep. at 53, 70; Konvalin's dep. at 30; Symes's dep. at 56; Ryan Gibson's dep. at 32-34; Jamie Volk's Dep. at 35-36). Nonetheless, plaintiff called Hengen numerous times complaining that her job responsibilities were taken away, that she was under stress because of the work environment, and that Herrera would oftentimes give her looks as though he was undressing

6

plaintiff with his eyes. (Pl.'s Dep. at 32.) Plaintiff felt that Herrera's glares constituted a continuing form of sexual harassment. (Id. at 43.) Moreover, plaintiff harbored fears that Herrera would one day retaliate against her, but these fears were uncorroborated. (Id. at 78; PSDMF at 5.) Though she was familiar with the district's sexual harassment policy and procedures, plaintiff never filed a formal complaint against Herrera for the looks he gave her, the stress of the workplace, or the loss of work duties. (Pl.'s Dep. at 32-33.) Plaintiff was of the opinion that a formal complaint would not do her any good, because she was afraid of losing her job and of no one believing her. (Id. at 33, 43.) However, plaintiff was never subjected to disciplinary action, a loss of work time, or a loss of salary at the behest of RCSD. (Id. at 75.)

In addition, plaintiff was discontent with the way counseling sessions were instituted, because the school counselor, Randy Christensen, was asked to provide services to both plaintiff and Herrera. (PSDMF at 7; Randy Christensen's Dep. at 31-32.) Although Christensen's experience in dealing with sexual harassment cases was very limited, (id. at 7-10), he counseled plaintiff on two occasions (id. at 31). However, upon plaintiff's discovery that Christensen counseled Herrera as well, plaintiff discontinued the sessions with Christensen due to the conflict of interests. (Id. at 32.) Plaintiff informed RCSD about this conflict, (Hengen's dep. at 36-37), but despite her efforts to secure a different counselor through the district, one was never provided, (PSDMF at 7).

On February 23, 2004, plaintiff submitted a letter to the district signifying her formal notice of resignation. (Pl.'s Dep. Ex. 2.) She stated the effective date of her resignation as March 12, 2004. (Id.) The remaining portion of her letter provides as follows:

7

> I have accepted a position with a different company. This was a very hard discussion [sic] to make. I have enjoyed working with such wonderful and knowledgeable people and have learned so much.
>
> I will help in any way that I can to make a smooth transition. Please feel free to contact me at any time if I can be of further assistance.
>
> I've really enjoyed working here. Thank You [sic] very much for the opportunities you've provided me.

(Id.) Around the time plaintiff was leaving the district, employees of the district and in the Agnes Parr Building, other than Herrera, arranged and attended a potluck lunch party for plaintiff. (Pl.'s Dep. at 25.) During the party, plaintiff conversed with Dr. Peter Wharton, Superintendent of RCSD, stating that she found a better, higher paying job with The Pool & Spa Center. (Id. at 23-26.) Although not mentioned in her letter of resignation, plaintiff also informed Dr. Wharton that the complained of sexual harassment and continuous stress played a part in plaintiff's decision to leave RCSD. (Id. at 26-27.)

But, in July 2004, plaintiff reapplied for her old position with the district. (PSDMF at 8.) At that point, she was aware that the technical department at Agnes Parr was being restructured due to the influx of newly hired people, (pl.'s dep. at 58); however, she did not know whether Herrera still worked for the district, (PSDMF at 9). On RCSD's job notice post, applicants for the Network Technology Associate I position were required to possess an Associate Degree in Computer Science, Information Services, or a related field, or the equivalent education. (Valerie Thompson's Dep. at 23-24; Valerie Thompson's Dep. Ex. 33.) The special areas of preferred skills for this position included the following: "(1) Experience with local and wide area networks and internet connectivity, (2) Experience with multiple platforms and protocols, (3) Ability to identify, diagnose and resolve network related problems, (4) Experience with backup and

recovery, (5) Effective communication and problem solving skills, (6) Well organized, self-motivated and creative." (Thompson's Dep. Ex. 33.) Plaintiff, though, was not offered, much less interviewed for, the position. (Thompson's Dep. at 26; PSDMF at 8-9.)

### B. Procedural History

Plaintiff submitted a charge of discrimination with the South Dakota Division of Human Rights and the United States Equal Employment Opportunity Commission on September 20, 2004, asserting that she was sexually harassed, forced to quit, and not rehired when she reapplied with the district. (Pl.'s Dep. Ex. 6.) A right to sue letter was sent to plaintiff on April 25, 2005. (RCSD's Ex. A.) On July 20, 2005, plaintiff filed a complaint alleging the following five causes of action: 1) Sexual Harassment under federal law; 2) Sexual Harassment under South Dakota law; 3) Constructive Discharge under federal law; 4) Negligent Hiring, Supervision, and Retention under South Dakota law; and 5) Negligent or Intentional Infliction of Emotional Distress under South Dakota law. (Compl. at 2-6.)

RCSD moved for summary judgment on March 31, 2006. Plaintiff filed a memorandum in opposition to RCSD's summary judgment motion on April 20, 2006. On May 4, 2006, RCSD replied to plaintiff's response.

## II. STANDARD OF REVIEW

"Summary judgment is proper if, viewing the record in the light most favorable to [plaintiff], there is no genuine issue of material fact" and RCSD is "entitled to judgment as a matter of law." Myers v. Richard County, 429 F.3d 740, 750 (8th Cir. 2005) (citing Fed. R. Civ. P. 56(c) (1987)). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).  As such, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." Id. at 247-48, 106 S. Ct. at 2510 (emphasis in original). "There is no genuine issue of material fact if the evidence is such that [a] reasonable jury could return a verdict for [plaintiff]." Robinson v. White County, Ark., 452 F.3d 706, 709 (8th Cir. 2006) (following Anderson, 477 U.S. at 248, 106 S. Ct. 2510). Initially, "[t]he party moving for summary judgment has the burden of proof to show there is no genuine issue of material fact." Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780, 783 (8th Cir. 2006) (adhering to Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Once the moving party satisfies this burden, however, the non-moving party bears an affirmative burden "to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial." Janis v. Biesheuvel, 428 F.3d 795, 799 (8th Cir. 2005); Fed. R. Civ. P. 56(e).  See Simpson v. Des Moines Water Works, 425 F.3d 538, 541-42 (8th Cir. 2005).

### III.  DISCUSSION

#### A.  Sexual Harassment: Counts I and II

Under Title VII and South Dakota law, an employer is prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (1991); see S.D. CODIFIED LAWS § 20-13-10 (1991).  See also Faragher v. City of Boca Raton, 524 U.S. 775, 786-87, 118 S. Ct. 2275, 2282-83, 141 L. Ed. 2d 662 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751, 118 S. Ct. 2257, 2264, 141 L. Ed. 2d 633 (1998); Huck v. McCain Foods, 479

N.W.2d 167, 169 (S.D. 1991) (indicating that South Dakota Codified Law § 20-13-10 is comparable to the corresponding Title VII provision addressing sexual harassment). For plaintiff to make a *prima facie* case of hostile work environment sexual harassment against RCSD based on the conduct of Herrera, a non-supervisory coworker, plaintiff must provide evidence of the following elements: 1) that plaintiff belongs to a protected group; 2) that plaintiff was subjected to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment affected a term, condition, or privilege of employment; and 5) that RCSD knew or should have known of the harassment and failed to take proper remedial action. Nitsche v. CEO of Osage Valley Elec. Coop., 446 F.3d 841, 845 (8th Cir. 2006); Powell v. Yellow Book USA, Inc., 445 F.3d 1074, 1077 (8th Cir. 2006).

RCSD argues that plaintiff's sexual harassment claims must be dismissed on summary judgment for failing to demonstrate a genuine dispute of material fact on elements four and five. (RCSD's Br. in Supp. of Mot. for Summ. J. at 8.) As to the fourth, RCSD contends that plaintiff "cannot prove that Herrera's alleged conduct affected a term, condition, or privilege of her employment." (Id.) Specifically, according to RCSD, Herrera's actions were isolated incidents, involving mere teasing and offhand comments. (Id. at 11.) Though conceding Herrera's conduct was offensive, RCSD maintains it never reached the level of harassment prohibited under Title VII. (Id.) Furthermore, because plaintiff remained an employee with the district for approximately one year after complaining to Konvalin about Herrera's behavior, RCSD asserts that the complained of conduct could not have been egregious enough to constitute a cognizable Title VII cause of action. (Id.)

11

With regard to the fifth element, whether RCSD knew or should have known of the harassment and failed to take proper action reasonably calculated to end the harassment, RCSD maintains it took immediate and appropriate remedial steps upon learning of Herrera's conduct. (Id. at 12.) Within four days of receiving the first oral complaint from one of plaintiff's female coworkers, as RCSD argues, Herrera was suspended without pay. (Id.) As finally noted by RCSD, once Herrera returned to work, he was subjected to numerous conditions and restrictions. (Id.)

Contesting RCSD's motion for summary judgment, plaintiff argues that Herrera's actions were not only in violation of the district's sexual harassment policy but also reprehensible under Title VII. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 11.) As examples of the severe and pervasive nature of the harassment, plaintiff points to Herrera's numerous instances of improper conduct while at the workplace, the manner in which her work was adversely impacted due to Herrera's behavior, and the physical and emotional effects she suffered because of the harassment. (Id. at 11-13.) Moreover, although she worked for the district for nearly one year after complaining to Konvalin, plaintiff maintains that she needed the job because of her single-mother status. (Id. at 13.)

Next, plaintiff asserts that RCSD's remedial measures were inadequate. (Id. at 14.) Specifically, as to the adequacy of the district's steps concerning Herrera, plaintiff argues that RCSD's decision to permit Herrera "to return to his same position in the same building" after two suspensions creates a material question of fact for trial. (Id.) In essence, plaintiff postulates that, instead of suspending Herrera, RCSD should have terminated his employment with the district. (Id. at 14-15.) In the alternative, plaintiff contests that RCSD's failure to place Herrera

in an auxiliary location within the district, rather than having him return to the Agnes Parr Building, creates a genuine issue of fact. (Id. 15-16.) As plaintiff's final proposition, she claims that Herrera's harassment never ended, despite the terms and conditions placed on him by RCSD. (Id. at 17.) Plaintiff cites the time when she was left alone in the building with Herrera as well as when Herrera attempted to converse with plaintiff in the hallway. (Id. at 17-18.) Because plaintiff's comfort level and stress went unmitigated, and because Herrera continued to gaze at plaintiff suggestively, plaintiff argues the harassment proceeded in the face of RCSD's restrictive measures. (Id. at 17.)

The first three elements of plaintiff's hostile work environment sexual harassment claims under Title VII and South Dakota law are undisputed here. As to the fourth element, the Court need not decide whether Herrera's conduct rose to the degree necessary to affect the terms and conditions of employment, because plaintiff failed to demonstrate that RCSD failed to take prompt and effective remedial action to end the sexual harassment. See Tatum v. Arkansas Dep't of Health, 411 F.3d 955, 959 (8th Cir. 2005).

"'Once an employer becomes aware of sexual harassment, it must promptly take remedial action which is reasonably calculated to end the harassment.'" Id. (quoting Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993)). The remedial actions RCSD took in this case satisfy this requirement. In early March 2003, one of plaintiff's female coworkers complained to Agnes Parr's supervisory personnel about Herrera's conduct at the workplace. Immediately following that coworker's complaint, plaintiff was approached by one of her supervisors, Konvalin, and asked if she had been subjected to any of Herrera's inappropriate actions. Plaintiff provided a statement detailing Herrera's ongoing sexually harassing conduct.

An informal investigation commenced within one day of receiving the complaints from plaintiff and her fellow workers. This inquiry involved three of plaintiff's supervisors. On March 6, 2003, merely one-half week after the first complaint was lodged, the district suspended Herrera without pay. Due to this suspension, Herrera lost approximately $4,000 in wages and the district initiated a formal investigation into the allegations. Under these circumstances, RCSD's response to the charges against Herrera was prompt, leaving no genuine issue of material fact for trial. See, e.g., Tatum, 411 F.3d at 959. Cf. Smith v. St. Louis Univ., 109 F.3d 1261, 1265 (8th Cir. 1997).

Following the district's formal investigation concluding the complaints against Herrera were credible, Herrera was permitted to return to work, but he was required to abide by numerous terms and conditions. Plaintiff, though, contends the terms and conditions were inadequate, because Herrera was allowed to return to the same building and operate in the same capacity. Instead, according to plaintiff, Herrera should have been fired or moved to an alternative location. As a corollary, plaintiff claims that the harassment never ended, regardless of the restrictions placed on Herrera by RCSD. Plaintiff maintains that the one time she was alone in the building with Herrera and the one time Herrera said "hi" to her in the hallway establish issues of disputed fact as to the effectiveness of RCSD's remedial measures. In addition, plaintiff asserts that Herrera's harassment continued through his suggestive glares aimed at plaintiff.

Here, however, RCSD's prompt actions to remedy the situation were reasonably calculated to stop Herrera's harassing behavior. See Cheshewalla v. Rand & Son Constr. Co., 415 F.3d 847, 851 (8th Cir. 2005). Herrera was monitored by supervisors and placed under restrictions. Although plaintiff harbored various subjective concerns about Herrera's return to

14

work, such as being left alone in a room or the building with Herrera, plaintiff was not left alone in a room or in the building with Herrera, except on one occasion when plaintiff returned from her lunch break. Such a situation was out of the district's and Herrera's control. Plaintiff and Herrera also worked in different rooms within the Agnes Parr Building and, most of the time, Herrera would remain in his room with the other technicians. After Herrera's return to work, he and plaintiff did not communicate; rather, Konvalin served as their supervisory intermediary. Moreover, once the district was notified of Herrera's attempt to communicate directly to plaintiff, he was again suspended without pay. Herrera's suspension, though, resulted from wrongdoing not wholly related to his attempt to talk with plaintiff. After Herrera's second suspension, RCSD received no further complaints regarding Herrera.

Plaintiff also was unsatisfied with the loss of work responsibilities stemming from the situation with Herrera. In addressing her concerns about the transfer of duties, Symes informed plaintiff that the district's "action [was] in no way a reflection on [her] work . . . ." (Symes's Dep. Ex. 18.) In accord with Symes's statement, plaintiff was never docked pay, disciplined, demoted, or removed from the work schedule.

As to the allegation that plaintiff endured continual harassment, even after restrictions were imposed on Herrera, plaintiff asserts that Herrera would stare at her as if he was undressing her with his eyes. Plaintiff, however, never filed another formal complaint against her harasser, because she thought RCSD's process was pointless, and because she was afraid of losing her job. Though plaintiff claims that filing more complaints against Herrera would put her job in jeopardy and serve as an exercise in futility, she was fully aware of RCSD's policy and procedures for reporting sexual harassment. "'[I]nevitable unpleasantness cannot excuse the employee from

15

using the company's complaint mechanisms.'" Williams v. Missouri Dep't of Mental Health, 407 F.3d 972, 977 (8th Cir. 2005) (quoting Shaw v. AutoZone, Inc., 180 F.3d 806, 813 (7th Cir. 1999)). An employee, such as plaintiff, "has a duty under Ellerth to alert the employer to any allegedly hostile environment and 'an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty . . . .'" Id. (brackets omitted) (following Shaw, 180 F.3d at 813). Therefore, plaintiff's failure to utilize RCSD's complaint system militates against her assertions that Herrera continually harassed her, especially in light of RCSD's prior course of conduct when dealing with Herrera's conduct in March and August 2003; that is, an investigation immediately ensued, Herrera was suspended without pay, and he was placed under strict supervision through various terms and conditions.

Lastly, although plaintiff maintains she informed Dr. Wharton that the harassment and stress played a role in her decision to leave the district, plaintiff's letter of resignation provides objective proof that she "enjoyed" her work and that the decision to take another higher paying job was difficult. (Pl.'s Dep. Ex. 2.) Such sentiment does not square with plaintiff's arguments. Moreover, in July 2004, plaintiff reapplied with RCSD to work in the same location and in the same position. Thus, even taking plaintiff's statements to Dr. Wharton in a light most favorable to her, plaintiff's subsequent actions demonstrate that RCSD's remedial measures were effective and adequate in purging the workplace of sexual harassment.

The record contains no evidence raising a genuine issue of material fact that supports plaintiff's claims of sexual harassment, based on a hostile work environment, under Title VII and South Dakota law. Accordingly, as to Counts I and II, RCSD's motion for summary judgment is granted.

### B.     Constructive Discharge: Count III

"'Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit.'" Tatum, 411 F.3d at 959 (quoting Baker v. John Morrell & Co., 382 F.3d 816, 829 (8th Cir. 2004)).  "To prove a case of constructive discharge, a plaintiff must show that: (1) 'a reasonable person in her situation would find the working conditions intolerable' and (2) 'the employer . . . intended to force the employee to quit.'" Id. (following Gartman v. Gencorp Inc., 120 F.3d 127, 130 (8th Cir. 1997)).  As to the first element, "'intolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings.'" Gartman, 120 F.3d at 130 (adhering to Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 796 (8th Cir. 1996) (citation omitted)).  In proving intent, the second element, plaintiffs may demonstrate that "'their resignation was a reasonably foreseeable consequence of their employer's discriminatory actions.'" Id. (quoting Hukkanen v. Int'l Union of Operating Eng'rs, 3 F.3d 281, 285 (8th Cir. 1993)).

RCSD argues that plaintiff's claim of constructive discharge fails due to three instances of objective conduct: 1) plaintiff's letter of resignation; 2) the duration of time plaintiff continued to work with the district after filing her complaint; and 3) plaintiff's desire to resume working for the district. (RCSD's Br. in Supp. of Mot. for Summ. J. at 15-16.)  In response, plaintiff contends RCSD ignored her complaints about Herrera by allowing him to return to work in the same capacity and in the same building and by transferring a portion of her work duties over to Herrera. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 20.)  Because Herrera was permitted to continue work with the district, plaintiff maintains that her job performance and health were negatively affected, thereby forcing her to quit. (Id.)

17

Plaintiff has failed to prove either of the elements set forth above. As stated previously, although she subjectively found the workplace intolerable, this is not the criterion. Tatum, 411 F.3d at 959; Gartman, 120 F.3d at 130. Indeed, plaintiff and Herrera worked in the same building. But, plaintiff and Herrera never shared an office space or room. Though she stated she was uncomfortable and harbored feelings that the harassment never ceased, she presented no evidence by filing additional complaints in accordance with RCSD's formal sexual harassment correction policies and procedures. In this respect, plaintiff's lack of action was unreasonable for failing to provide RCSD with a sufficient opportunity to correct any alleged misconduct. See Williams, 407 F.3d at 977; Jackson v. Arkansas Dep't of Educ., Vocational and Technical Educ. Div., 272 F.3d 1020, 1027 (8th Cir. 2001). "'An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged.'" Baker, 382 F.3d at 829 (quoting West v. Marion Merrell Dow, Inc., 54 F.3d 493, 498 (8th Cir. 1995)).

While RCSD acknowledged that it had transferred some of plaintiff's work responsibilities to Herrera upon his return, RCSD stated to plaintiff that such action was not a reflection of her work. Rather, the shift of duties was to protect plaintiff and, according to plaintiff, she never experienced any adverse working conditions such as a reduction in pay, disciplinary action, or a demotion in job title.

Plaintiff also expressed that she was scared Herrera would physically retaliate against her. Again, however, plaintiff's fear is unreasonable and unsubstantiated. No objective, credible evidence corroborates these concerns. Tatum, 411 F.3d at 959.

Finally, as RCSD correctly points out, plaintiff's letter of resignation, the lapse of time between plaintiff's complaint and her resignation, and her decision to reapply with the district, all provide objective proof that plaintiff was not forced to quit. As such, the record contains no evidence creating a genuine issue of material fact that supports plaintiff's constructive discharge action. RCSD's motion for summary judgment on Count III is granted.

### C. Retaliation

A claim of retaliation was not pleaded in plaintiff's complaint. (See Compl. 2-6.) No mention of the word "retaliation" was employed in plaintiff's complaint. (See id.) Federal Rule of Civil Procedure 8(a) provides, in relevant part, that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Id. (1987). Because there is nothing alleged in plaintiff's complaint that would have notified RCSD of this claim, plaintiff fails to meet this low standard. N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1056-57 (8th Cir. 2004); see Rodgers v. City of Des Moines, 435 F.3d 904, 910 (8th Cir. 2006) (stating that parties cannot seek leave to amend the complaint to add or manufacture a claim in an effort to avoid summary judgment).

Moreover, plaintiff never filed a motion to amend the complaint to include a cause of action for retaliation, except in a footnote of her memorandum opposing summary judgment. (Pl.'s Br. in Opp'n to Mot. for Summ. J. at 19.) Pursuant to Federal Rule of Civil Procedure 7(b)(1), "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Id. (1983). These requirements, too, were not complied with. For the above reasons, any claim of retaliation has been waived.

### D. State Claims of Negligent Hiring, Supervision, and Retention & Negligent or Intentional Infliction of Emotional Distress: Counts IV and V

Plaintiff's remaining claims are issues of South Dakota law. Because RCSD's motion for summary judgment defeats plaintiff's federal question claims as a matter of law, this Court no longer retains original jurisdiction over plaintiff's other causes of action. See 28 U.S.C. § 1367(a) (1990). Thus, pursuant to 28 U.S.C. § 1367(c)(3), this Court employs its discretion in declining to "exercise supplemental jurisdiction over a claim under subsection (a)" since the "[C]ourt has dismissed all claims over which it has original jurisdiction . . . ." Id. See, e.g., Moots v. Lombardi, 453 F.3d 1020, 1024 (8th Cir. 2006).

## V. CONCLUSION

No genuine issues of material fact support plaintiff's sexual harassment and constructive discharge claims against RCSD. RCSD's actions were prompt and adequate in ending Herrera's conduct. Because of RCSD's immediate and effective remedies, a reasonable person would not have found the workplace intolerable or that the district intended to force plaintiff to quit. Accordingly, it is hereby

ORDERED that defendant Rapid City School District's motion for summary judgment (Docket #14) is granted.

IT IS FURTHER ORDERED that plaintiff DeDe Engel's motion for continuance (Docket #20) is moot.

Dated this 23rd day of October, 2006.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE